THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
GERALDINE REUTER,

                Plaintiff,

                **ORDER**
-against-              10-CV-1558 (SJF) (ETB)

HARTFORD LIFE INSURANCE COMPANY,

                Defendant.
----------------------------------------------------------X
FEUERSTEIN, J.

On March 2, 2010, Geraldine Reuter ("plaintiff") filed a complaint in the Supreme Court, County of Suffolk, against Hartford Life Insurance Company ("Hartford"), alleging breach of contract. The action was removed to this Court on April 8, 2010. On October 15, 2010, Hartford moved and plaintiff cross-moved pursuant to Federal Rule of Civil Procedure 56 for summary judgment. For the following reasons, plaintiff's motion is granted in part and Hartford's motion is denied.

I.    Background

The facts are largely uncontested. On January 23, 1996, Hartford issued to plaintiff's husband, Robert Reuter ("Reuter"), a "Group Flexible Premium Variable Annuity Certificate" ("the certificate" or "the contract") as a Qualified Individual Retirement Annuity ("IRA"), which provided that annuity payments would commence on September 25, 2016. Reuter 6, 24-27.[1] The certificate

---

    [1]Defendant has attached an extensive record to the declaration of Robert J. Caron in support of its motion for summary judgment. See Exhibit A, B. The record is enumerated with

permitted Reuter to request a partial remittance of the value of the certificate at any time prior to the annuity commencement date, but "[i]f the remaining Certificate Value following such surrender is less than [one thousand dollars] $1,000, [Hartford] will terminate the certificate and pay the Termination Value." Reuter 16. The "Termination Value" is defined as the "value of the certificate upon termination" to be calculated pursuant to the terms of the contract. Reuter 10, 16-18. The contract also provided that a death benefit would be paid to plaintiff "in the event of the death of [Reuter] prior to the Annuity Commencement Date," to be "calculated as of the date [Hartford] receives written notification of Due Proof of Death." Reuter 17, 18.

On October 24, 2005, Reuter enrolled in Hartford's automatic Annual Required Minimum Distribution program (the automatic "RMD") which calculated Reuter's minimum withdrawal obligation to comply with federal tax laws. Reuter 37-40, 271-75. The automatic RMD withdrew the calculated amount from Reuter's account and sent him checks for sixty-five dollars and thirty-eight cents ($65.38) on November 2, 2005, 2006 and 2007. Reuter 408-09, 424-25, 440-41. On or about December 31, 2005, 2006 and 2007, Hartford sent account statements to Reuter informing him of the value of the certificate following the deduction. Reuter 408-11, 424-27, 440-43.

On or about September 30, 2008, Hartford sent Reuter an account summary indicating that the value of his account was one thousand, sixty-three dollars and seventy-nine cents ($1,063.79) and that sixty-five dollars and thirty-eight cents ($65.38) would be withdrawn from his account on November 3, 2008. Reuter 452-55. Reuter died on October 9, 2008, prior to the RMD deduction. *See* Reuter 110. On November 4, 2008, Hartford notified Reuter by letter that (as a result of the automatic RMD) the certificate's value had dropped to nine hundred ninety-nine dollars and ninety-

internal bates numbers Reuter 1-504, referenced herein as "Reuter."

2

eight cents ($999.98), and that Hartford had terminated the certificate. Reuter 113, 456-59, 461, 490. The letter indicated that "a reinstatement of the funds into [Reuter's] annuity contract will not be permitted under any circumstances." Reuter 113.

Plaintiff received the November 4, 2008 letter from Hartford, indicating that Reuter's annuity contract had been terminated, and the 2008 RMD, which she deposited on November 6, 2008. Plaintiff's Affidavit ("Pl. Aff.") ¶¶ 3, 4, Exhibit 1, 3. After federal taxes had been withheld and an "Annual Maintenance Fee" deducted, a check for the remaining value was sent to Reuter. Reuter 61-62, 503. The check stated it was "for: full termination of account no. 310121045." Reuter 503.[2] Plaintiff received and deposited the check on November 12, 2008. Pl. Aff. ¶ 4, Exhibit 4, 5. Plaintiff states that she was unaware of the annuity contract's death benefit provision until she met with a financial advisor in late November 2008. *Id.* ¶¶ 5, 6. Plaintiff mailed the death certificate to Hartford after her meeting with a financial advisor. *Id.* ¶ 6. Hartford's representatives were "notified" of Reuter's death on November 24, 2008, *id.* Exhibit 11, and received the death certificate on December 18, 2008. Reuter 109-112.

Plaintiff contends that based upon the facts above, she is entitled to payment of the death benefit on Reuter's annuity contract. Hartford argues that the termination of the contract prior to the receipt of the death certificate prevents plaintiff's ability to collect the death benefit.

---

[2]In light of the fact that plaintiff does not seek reinstatement of the annuity contract, Hartford has withdrawn its claim that the cashing of the "termination" check constitutes accord and satisfaction of plaintiff's claim to restore the contract. *See* H. Supp. at 19; H. Opp. at 14.

II. Discussion

   A.   Summary Judgment Standard

Summary judgment should not be granted unless "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (citations and quotation marks omitted). "A fact is material when it might affect the outcome of the suit under governing law." Id. An issue of fact is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the initial burden of establishing the absence of any genuine issue of material fact, after which the burden shifts to the nonmoving party to establish the existence of a factual question that must be resolved at trial. See Koch v. Town of Brattleboro, VT, 287 F.3d 162, 165 (2d Cir. 2002) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

"In order to defeat a motion for summary judgment supported by proof of facts that would entitle the movant to judgment as a matter of law, the nonmoving party is required under Rule 56(e) to set forth specific facts showing that there is a genuine issue of material fact to be tried. If the nonmoving party does not so respond, summary judgment will be entered against him." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993) (citations omitted). The nonmoving

4

party "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible, or upon the mere allegations or denials of the nonmoving party's pleading." Id. at 532-33 (quotations and citations omitted).

B.   Breach of Contract Claim

   1.   Severability of the Death Benefit from Annuity Obligation

Plaintiff argues that the certificate created two (2) distinct and severable contractual obligations: (1) "to pay [Reuter] an annuity over his lifetime commencing on the annuity commencement date." and (2) "to pay [plaintiff] a death benefit in the event he died" before the annuity commencement date." Plaintiff's Memorandum in Opposition ("P. Memo.") at 7. If this were true, plaintiff contends, Reuter's breach of his obligation to keep one thousand dollars ($1,000.00) in his annuity account would result in the termination of his annuity benefits, but would not affect plaintiff's eligibility to recover the death benefit.

Whether individual obligations within a contract are severable is a question of the intent of the parties, which will be "determined from the language employed by the parties, viewed in the light of the circumstances surrounding them at the time they contracted." Christian v. Christian, 42 N.Y.2d 63, 73, 365 N.E.2d 849, 396 N.Y.S.2d 817 (N.Y. 1977); see also In re Balfour MacLaine Intern. Ltd., 85 F.3d 68, 81 (2d Cir. 1996).

The contract does not contain a severability clause and does not indicate that any of its clauses are designed to be severable. Furthermore, the contract places relatively few obligations on Reuter, and provides specific outcomes based upon his failure to fulfil these obligations. For

5

example: the contract details the extent to which the terms of the annuity would change if Reuter misstated his "age or sex," Reuter 13; that payment of annuities is conditioned upon proof that Reuter is alive, Reuter 14; and termination of the certificate if the certificate value is less than one thousand dollars ($1,000.00). Reuter 16. The contract does not create several promises and obligations as plaintiff argues. To receive the policy as written, plaintiff made one (1) payment of one hundred and one thousand, four hundred fourteen dollars, and ninety-seven ($101,414.97). Reuter 6. Plaintiff's obligation to fund the account having been met, the contract compels Hartford to pay Reuter the annuity payments if he survives the annuity commencement date or alternatively pay his designated beneficiary a death benefit if he does not. There is no indication that the death benefit was a separate obligation from the annuity payments as opposed to a mechanism by which to compensate Reuter for the value of his certificate should he die before receiving any contracted for payments. The annuity payments and the death benefit were complementary obligations, parts of a wholly integrated contract, and not separate, individually agreed upon promises. Compare with American Sur. Co. of New York v. Rosenthal, 133 N.Y.S.2d 870, 206 Misc. 485, 488-489 (N.Y. Sup. Ct. 1954) (relied upon by plaintiff).

2. Hartford's Duty to Pay the Death Benefit

The parties agree that the certificate is subject to the law of New York State, *see* Reuter 4, 477, P. Memo. at 2; *see generally* Hartford's Memorandum in Support ("H. Supp."), that if the contract had not been terminated, plaintiff would be entitled to the death benefit, *see* Hartford's Memorandum in Opposition ("H. Opp.") at 6; Compl. ¶¶ 8, 9, and that the contract was in effect on

the date that Reuter died. Therefore, the sole question before the Court is whether, given the peculiar timing of Reuter's death and the termination of the certificate based upon the automatic RMD deduction, the contract requires Hartford to pay the death benefit.

In New York, "a contract imposes a condition precedent when it provides that an act or event, other than a lapse of time . . . must occur before a duty to perform a promise in the agreement arises." Diesel Props S.R.L. v. Greystone Business Credit II LLC, 631 F.3d 42, 53 (2d Cir. 2011) (citing Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co., 86 N.Y.2d 685, 690, 636 N.Y.S.2d 734, 737, 660 N.E.2d 415 (1995)) (internal quotation marks omitted). The contract imposes a condition, the occurrence of which would compel Hartford to pay the death benefit; however, the parties dispute *which* event, i.e. the death or receipt of the Certificate of Death would trigger Hartford's duty to pay.

It is well settled that the threshold question in a dispute over the meaning of the terms of a contract is whether they are ambiguous. See Lockheed Martin Corp. v. Retail Holdings, N.V., --- F.3d ---, 2011 WL 1548952 at *5 (2d Cir. 2011); Revson v. Cinque & Cinque, P.C., 221 F.3d 59, 66 (2d Cir. 2000). Contractual language is unambiguous if it has "a definite and precise meaning . . . [which carries] no reasonable basis for a difference of opinion," but is ambiguous if "it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." Krumme v. WestPoint Stevens Inc., 238 F.3d 133, 138-39 (2d Cir. 2000) (citations omitted).

The contract specifies that the death benefit "is <u>calculated</u> as of the date [Hartford] receives written notification of Due Proof of Death at the Administrative Office." Reuter 17, 19 (emphasis added). From the context of the clause, which describes the process by which Hartford values the

7

death benefit, "calculated" refers to Hartford's calculation of the *amount* of the death benefit. Due Proof of Death is defined as "a certified copy of the death certificate," a court order, a physician's statement or "any other proof acceptable to [Hartford]." Reuter 9. The specific death benefit plaintiff is seeking, the "Maximum Anniversary Value" of the certificate, is defined as an amount calculated "[a]s of the date of death." Reuter 10. The contract states that a death benefit is payable in either one (1) lump sum or pursuant to an available settlement option only if the settlement option "provide[s] that any amount payable as a death benefit will commence upon notification of Due Proof of Death . . ." Reuter 17. In several clauses, the contract determines the amount payable "in the event of the death of [Reuter]." Reuter 12, 17, 18. The contract does not contain definitive language contemplating a situation where the certificate owner dies with a valid annuity contract, but his death certificate is received when the contract is no longer valid. Thus, the contract is ambiguous as to whether the duty to pay the death benefit is conditioned upon the event of Reuter's death or Hartford's receipt of his death certificate.

When terms of a contract are ambiguous, a court looks to extrinsic evidence to determine the parties' intent. See Morgan Stanley Group Inc. v. New England Ins. Co., 225 F.3d 270, 275-76, (2d Cir. 2000). If extrinsic evidence does not provide a conclusive answer, the court may apply other rules of contract construction, including the rule of *contra proferentem*, which in this context provides that when interpreting an insurance policy drafted by the insurer, "any ambiguity in [the] . . . policy should be resolved in favor of the insured." Id. at 27 (citing McCostis v. Home Ins. Co., 31 F.3d 110, 113 (2d Cir. 1994)); see also Parks Real Estate Purchasing Grp. v. St. Paul Fire and Marine Ins. Co., 472 F.3d 33, 43 (2d Cir. 2006). Hartford argues that their obligation to pay the death benefit is included in the contract "in order to protect against the loss of the contract holder's

investment if the contract owner dies before annuitizaiton begins," and that therefore the purpose of the death benefit was fulfilled when plaintiff deposited the check representing the full termination value of the certificate. H. Opp. at 5-6. The parties have not presented any extrinsic evidence that would clarify the intent of the parties with respect the issue. Therefore, the ambiguities in the contract are to be construed against the interest of Hartford. As the contract was in effect at the time of Reuter's death, Hartford had a contractual obligation to pay the death benefit to plaintiff. Pursuant to the contract, the death benefit is to be calculated as of the date Hartford received Reuter's death certificate had the annuity not been terminated on November 4, 2008. *See* Reuter 17.

4. Damages

Plaintiff calculates the death benefit to be ninety-four thousand, seven hundred eighty-four dollars and seventy-six cents ($94,784.76), Pl. 56.1 Stmt. ¶ 82; Hartford's 56.1 Counterstatement ¶ 82, based upon a statement issued for the quarter ending September 30, 2008 indicating the Maximum Anniversary Value to be ninety-four thousand, eight hundred fifty dollars and fourteen cents ($94,850.14), Reuter 453, and a conversation with Matthew Howell from Hartford. Reilly Declaration ¶ 6. However, the quarterly statement indicates that the Maximum Anniversary Value therein "is not equivalent to the final Death Benefit; it is only one component of the overall Death Benefit calculation." Reuter 453. Moreover, for purposes of the death benefit, the "Maximum Anniversary Value" is calculated as the highest value when the account value on a particular certificate anniversary has been "increased by . . . any premium payments made . . . and reduced by . . . any partial surrenders since that anniversary." Reuter 10. The "Maximum Anniversary Value"

9

should also be reduced by payments to plaintiff after October 9, 2008, including the 2008 RMD and the payment in termination of the certificate.

Plaintiff shall prepare and serve a motion for damages on or before June 17, 2011. Hartford shall serve opposition, if any, on or before July 18, 2011. Pursuant to the Court's individual rules, Plaintiff is to file the bundled motion with her reply, if any, on or before July 28, 2011.

III. Conclusion

For the foregoing reasons, plaintiff's motion is granted in part and Hartford's motion is denied. Plaintiff is directed to serve a motion for damages in accordance with this order.

**SO ORDERED.**

_____
SANDRA J. FEUERSTEIN
United States District Judge

Dated: May 19, 2011
Central Islip, New York